ROBERTSON, Justice,
for the Court.
Communications Improvement, Inc. (CII), made application to the Mississippi State Tax Commission for exemption from the payment of state income taxes. The Commission denied the application, and assessed income taxes against CII for the years 1972, 1973 and 1974.
CII appealed to the Chancery Court of the First Judicial District of Hinds County, and that Court on March 18, 1976, affirmed the order of the State Tax Commission and decreed that CII pay $17,844.57 for state income taxes due for 1972, 1973, and 1974, and interest in the amount of $2,919.84, and legal interest from the date of the decree. CII appeals.
The sole legal issue to be decided by this Court is whether CII qualifies for exemption from the payment of state income taxes under Mississippi Code Annotated, section 27-7-29 (1976 Supp.), the pertinent part of which provides:
“(a) The following organizations shall be exempt from taxation under this article:
[[Image here]]
“(3) Cemetery corporations; religious, charitable, educational or scientific associations or institutions, including any community chest, funds or foundations, organized and operated exclusively for religious, charitable, scientific, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual.” (Emphasis added).
CII claims that it is an educational association or institution organized and operated exclusively for educational purposes.
CII is the interim licensee and operator of television station WLBT, Channel 3, a highly successful television station organized, developed and operated by the Lamar Life Broadcasting Company as a commercial television station for many years. The purpose for which CII was organized is succinctly stated in its charter of incorporation:
“6. This corporation is created for the purpose of encouraging and promoting the study, use, understanding, and development of all forms of communication in Jackson, Mississippi, and surrounding areas; to experiment with, promote, develop, operate, and advise any and all existing forms of mass communication media and to develop new forms of public communication and new applications of existing communications methods; to develop the communication skills of the general public and media personnel; to improve the understanding, relationship, and dialogue between all forms of communications media, the general public, and the governmental community.
[[Image here]]
“To raise funds to be used in the furtherance of the corporate purposes by engaging in publishing, printing, broadcasting, distribution of printed materials, operation of reading libraries, film libraries, and other lawful activities involving utilization of communication products skills and related activities.”
The charter of incorporation also provides:
“7. This corporation shall issue no shares of stock and shall not divide any dividends or profits among its members.”
Mr. Kenneth Dean, president of CII, testified that the main purpose of CII was to operate television station WLBT on an interim basis, that WLBT was a commercial television station and an affiliate of the National Broadcasting Company.
The Federal Communications Commission (FCC), in granting an interim license to CII, imposed these conditions:
“A. That Communications Improvement, Inc., shall submit on a semiannual basis, a balance sheet, a revenue statement, and a statement as to the disposition of net profits.
“B. That net profits shall be distributed within the State of Mississippi, as *537 provided in paragraph 18, in Memorandum Opinion and Order, released September 8, 1970.”
[[Image here]]
“18. With respect to net profits, CII states: If Interim authority is granted, Improvement (CII) will donate the entire net profits of operation to nonprofit organizations engaged in activities relating to broadcasting, primarily in Mississippi. Plans include the donation of about one-half of the net profits to finance the development of educational television in the State of Mississippi. The allocation of funds for this .purpose will be arrived at in consultation with the organizations engaged in planning and operating non-commercial educational facilities in the State. Improvement will also seek to develop and support a communications training facility at a predominantly Negro college, preferably in Mississippi. Improvement intends to administer its grant program in such manner as to avoid any influence or control over the program content or staffing of either the educational television stations or the educational institution.”
Mr. Dean further testified that station WLBT is run just as any other commercial television station, and that the general manager of the station “is on a profit-sharing salary, so I don’t know exactly what it might be.” Dean testified, as to the educational grants made by CII:
“We made a grant to Mississippi Valley State College for a training program of a black engineer in 1972 for $448. . We made a grant in 1974 to Tougaloo College for the preplanning stage of a Department of Journalism for $26,500. We made a grant to Mississippi Educational Television for $26,000. Then in ’75 we made a $11,000 grant to Tougaloo College for the continuing development of the Department of Journalism. We made in ’75 a $37,000 grant to Educational Television for the development of scientific programs for public school children. We have further approved a grant of $10,200 to Tougaloo College which will be paid upon call from them sometime this month.”
Mr. Garland Coldiron, auditor for the State Tax Commission, testified that the net profits for CII for the three-year period 1972 through 1974 were $405,369.97, and that the total contributions during this period were $76,320.
Mr. Harold Boleware, the accountant for CII, testified that CII had no invested capital, and that the entire capitalization for the beginning of business in June, 1971, came from a $300,000 loan; that when CII as an interim licensee ceased to operate station WLBT that it would have to pay off this loan either from net profits or a complete liquidation of its assets.
As a rebuttal witness, Mr. Dean testified that, as he understood the FCC order, CII was required to distribute its net profits to two different areas:
“Development of educational television matter primarily to be consumed for education of underprivileged children in the Mississippi Delta. Secondly, to an institution of higher learning that is predominantly negro in this state for the purpose of developing a minority program in Journalism.”
Mr. Dean explained that it would be much better for the educational institution selected to develop a journalism program to receive a large block grant at the end of the interim period rather than to dribble it out in small contributions. He stated that there were at least three institutions of higher learning in the state developing program proposals for a minority program in journalism. He testified:
“One of the applicants, Tougaloo College, has said to us, ‘We would prefer to have a block grant made if we are chosen at the end of the interim operation so that we can set up an endowment program rather than create a situation where each year along the way we expand our program but at the end have no endowment.”
*538 We think that it is abundantly clear from the language of the charter of incorporation of CII and the testimony of Kenneth Dean, its president, that the primary purpose for which CII was organized was to operate on an interim basis television station WLBT, a highly profitable commercial television station. As an incident of its operation, it was required by an order of FCC to disburse about one-half of its net profits to educational television and the rest (impliedly) to an educational institution which would develop a training program in journalism for minorities.
In our opinion, CII is just like any other taxpayer making contributions to a school, college, university, or educational television; it receives full credit for its contributions as deductions from its net income.
However, CII was not organized exclusively for educational purposes; neither is it being operated exclusively for educational purposes, as specifically required by Mississippi Code Annotated section 27-7-29 (1976 Supp.), in order to be exempt from taxation. The chancery court was correct in finding that CII was not exempt from paying state income taxes on its net profits.
The decree of the chancery court is, therefore, affirmed.
AFFIRMED.
PATTERSON, C. J., INZER and SMITH, P. JJ., and SUGG, WALKER, BROOM, LEE and BOWLING, JJ., concur.